UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK SCHOLTEN,

    Plaintiff,

v.                                                Case No. 1:06-CV-303
                                                     Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).[1]

        Plaintiff was born on November 10, 1958 and completed high school (AR 55, 89).[2] He had previous employment as a bartender (AR 84). Plaintiff alleged that he has been disabled since April 1, 2002 (AR 55), and has identified his disabling conditions as an injury to his left knee, which makes it difficult for him to walk, kneel, climb steps, carry heavy loads or climb ladders (AR 83). After administrative denial of these applications, an ALJ reviewed plaintiff's claims *de novo* and entered a decision denying his claim on September 22, 2005 (AR 17-25). This decision, which

---

[1] In his brief, plaintiff states that he also seeks judicial review for a final decision denying his claim for supplemental security income (SSI). Plaintiff's Brief at 1. However, the record does not reflect that plaintiff filed an SSI claim or that the ALJ's decision addressed an SSI claim.

[2] Citations to the administrative record will be referenced as (AR "page #").

was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged disability onset date (AR 24). Second, the ALJ found that plaintiff had severe impairments of "s/p left great toe amputation; Charcot's arthropathy of the left knee; and diabetes mellitus, diabetic neuropathy, and diabetic retinopathy, s/p focal laser surgery" (AR 24). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 24).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform work except for lifting and/or carrying more than 20 pounds occasionally and 10 pounds frequently; in an 8-hour workday with normal breaks, standing and/or walking for more than 2 hours and sitting for more than 6 hours; operating foot controls with the left leg; climbing ramps and stairs more than occasionally; balancing more than occasionally; climbing of ladders, ropes or scaffolds; kneeling, crouching or crawling; and avoiding concentrated exposure to vibration and working around hazardous machinery at unprotected heights.

(AR 24). The ALJ also found that plaintiff's statements regarding his impairments and their impact on his ability to work were not totally credible (AR 24). The ALJ further found that plaintiff was unable to perform any of his past relevant work (AR 24).

At the fifth step, the ALJ found that plaintiff could perform a significant number of light work jobs in the regional economy (Michigan), including manufacturing (30,000 jobs) and clerical (35,000 jobs) (AR 23). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 25).

### III. ANALYSIS

Petitioner raises four issues on appeal.

**A.   Whether the ALJ committed reversible error in failing to provide any reasons whatsoever for his rejection of the opinion of Dr. Hance, a treating orthopedic surgeon, who repeatedly opined that plaintiff was not able to return to work.**

**1.   The opinions of Joseph Hance, M.D. and B. Scott Groseclose, M.D.**

Plaintiff's treating orthopedic surgeon, Dr. Hance, opined that plaintiff could not return to work due to his left knee impairment (AR 211-12, 214-18, 221-22). At a deposition held in February 2004, Dr. Hance testified that plaintiff suffered from an undisplaced proximal tibial fracture in April 2002, which resulted in a varus deformity of the knee, causing plaintiff "just awful pain" (AR 310, 321). When Dr. Hance saw plaintiff in November 2002, it appeared that the fracture had not healed, that plaintiff started walking on it, and that the bone shifted (AR 323). The doctor stated that in 20 years, he had never seen this happen and was "shocked" that there "had been a shift in that major fragment" (AR 323). Dr. Hance examined plaintiff on the day of the deposition, and determined that nothing had changed since his last examination in 2002 (AR 320). The doctor noted that when plaintiff wears a brace, he has difficulty being up more than "a couple hours a day" (AR 321). Dr. Hance felt that a "normal person" would not be able to tolerate plaintiff's painful condition (AR 321).

Plaintiff also treated with Dr. Groseclose, who found in June 2003 that plaintiff had a significant varus deformity at the proximal tibial level and could ambulate with a knee brace (AR 227). Dr. Groseclose found that it would be very difficult for plaintiff to pursue any kind of work that involved heavy lifting, and recommended light duty jobs or a sit down job, on a "long-term/permanent basis" (AR 227).

**2.     Legal standard**

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### 3. Dr. Hance's opinion that plaintiff is disabled

The record reflects that Dr. Hance repeatedly classified plaintiff as unable to work, and as disabled as of November 20, 2002 (AR 211-12,214-17, 221-22). Although Dr. Hance was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled"). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

### 4. ALJ's failure to discuss Dr. Hance's opinions

However, the court agrees with plaintiff that the ALJ erred in evaluating Dr. Hance's opinions. The record reflects that while the ALJ gave great weight to Dr. Groseclose's opinions, he did not address Dr. Hance's opinions in any manner (AR 19-21). The ALJ had the authority to resolve any conflicts between the opinions of treating plaintiff's treating physicians. *See Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996). And in exercising that authority, the ALJ could properly adopt the opinions expressed by Dr. Groseclose over those expressed by Dr. Hance. Nevertheless, in this process, the ALJ was required to give good reasons for not crediting Dr. Hance's opinions. *See Wilson*, 378 F.3d at 545. Accordingly, the ALJ's decision should be reversed and remanded. On remand, the ALJ should explain his rationale for rejecting Dr. Hance's testimony.

  **B.**  **Despite finding that one of plaintiff's severe impairments is diabetic retinopathy, the ALJ committed reversible error in failing to find that plaintiff has any visual limitations whatsoever.**

  Next, plaintiff contends that the ALJ erred, because he failed to include any visual limitations in plaintiff's RFC, despite finding that plaintiff suffered from the severe impairment of diabetic retinopathy. The court agrees.

  A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ability to do basic work activities is defined in § 404.1521(b) as "the abilities and aptitudes necessary to do most jobs." *See generally, Salmi v. Secretary of Health and Human Services*, 774 F.2d 685, 691 (6th Cir.1985) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience").

  In his decision, the ALJ discussed a report from April 2003, in which Dr. Ramin Sarrafizadeh found that plaintiff had a "visual acuity with correction of 20/20 in the right eye and 20/400 in the left eye" (AR 19). The ALJ then found that plaintiff suffered from diabetic retinopathy, which he classified as a "severe impairment." Given this determination, it follows that the limitations of plaintiff's condition have more than a "minimal effect" on his ability to work. *See Salmi*, 774 F.2d at 691. Based on this record, it appears that the ALJ should have discussed the limitations arising from plaintiff's lack of visual acuity in the left eye. *See, e.g., Doolittle v. Apfel*, 249 F.3d 810, 811 (8th Cir. 2001) (where claimant's best corrected visual acuity in an eye was 20/400, "it was incumbent on the ALJ to call a vocational expert to determine whether there are jobs

in the national economy which the claimant can perform, and if so, the extent to which that base may be diminished for persons with such an impairment"). However, the ALJ's decision did not address any visual limitations arising from this severe impairment. Accordingly, this matter should be reversed and remanded to the Commissioner for an evaluation of the limitations posed by this condition.

### C. Whether the ALJ committed reversible error in failing to properly apply the Sixth Circuit pain standard.

Next, plaintiff contends that the ALJ failed to apply the Sixth Circuit's test regarding disabling pain and that the ALJ's credibility findings are not based on a full and complete reading of the administrative record.

An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence

that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987).

The regulations list seven factors to be used by the Commissioner in assessing the credibility of an individual's statements regarding symptoms and pain: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and, other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529). To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

Since the ALJ has not properly addressed critical medical evidence, i.e., Dr. Hance's opinions and plaintiff's visual acuity limitations, the court is unable to apply the *Duncan* test until

these two issues are addressed. On remand, the ALJ should also re-evaluate plaintiff's claim for disabling pain.

> **D.    Whether the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that plaintiff can perform.**

Finally, plaintiff contends that the ALJ failed to demonstrate that he could perform other work in the national economy at step five of the sequential evaluation. Specifically, plaintiff contends that the ALJ's hypothetical question posed to the vocational expert (VE) was flawed and that the VE's testimony conflicted with the *Dictionary of Occupational Titles* (*DOT*).

> **1.    Hypothetical question**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

As previously discussed, the ALJ's decision was based upon an incomplete evaluation of the medical evidence. The ALJ's findings, including his RFC determination, may well

11

change when the evidence is re-evaluated on remand. Accordingly, it is unnecessary to review the hypothetical questions posed previously to the VE.[3]

## IV. Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's claim consistent with this report and recommendation.


Dated:  August 13, 2007                        /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[3] The court, however, notes its disagreement with plaintiff's contention that the ALJ improperly accepted the VE's testimony, because the testimony conflicted with the *DOT*. An ALJ is "within his rights to rely solely on the vocational expert's testimony," even if that testimony conflicts with the *DOT*, because "[t]he social security regulations do not require the [Commissioner] or the expert to rely on classifications in the *Dictionary of Occupational Titles*." *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995).